3-23-0264, the City of Oakbrook Terrace Appellant v. Illinois Department of Transportation and Omer Osman, et al., Appellees. Thank you. Good afternoon, Counsel. Good afternoon, Your Honors. Mr. Holmes, you may begin. Thank you. May it please the Court, Matthew Holmes on behalf of the Appellant, City of Oakbrook Terrace. Your Honors, this is a case about an administrative agency, the Illinois Department of Transportation, exceeding its authority. In 2012, the City of Oakbrook Terrace, an Illinois Home Rule municipality, legislated to make its traffic law enforcement more efficient. Pursuant to the authority granted to it by 11-208F of the Illinois Vehicle Code, it passed an ordinance to establish automated traffic law enforcement systems at the intersection of Illinois Route 83 and 22nd Street, both state highways located within the corporate limits of the City of Oakbrook Terrace. Conversely, no statute expressly grants the Illinois Department of Transportation the power to authorize automated traffic law enforcement systems on state or local highways. In 2016, the Department issued a highway permit to allow the construction and installation of the automated traffic law enforcement system on the state highway. It is undisputed that the highway permit was issued pursuant to Section 4-209 of the Illinois portion of the state highway. The section of the highway code is generally applicable and does not mention automated traffic law enforcement systems at all. The automated traffic law enforcement system was installed by the City and accepted by the Department in 2017. Once the system is installed, nothing in Section 4-209 extends the Department's authority to regulate the operation of an automatic traffic law enforcement system on a state highway. Once installed and accepted, nothing contained in the highway permit extends the Department's authority to include regulating the operation of an automated traffic law enforcement system on a state highway. The Department claims that it has authority to regulate the operation of such devices based on its publication of a Safety Engineering Policy Memorandum. The memorandum does not so extend the Department's authority, and even if it did, the memorandum is invalid. The memorandum is a rule as defined under the Administrative Procedures Act. Section 1-70 of the Act states that a rule means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy. The memorandum is entitled, quote, Safety Engineering Policy Memorandum. The memorandum implements the Department's policy regarding the installation of automated traffic law enforcement systems on a state highway. It has general applicability. There is no dispute that the memorandum was never adopted pursuant to the requirements of the Administrative Procedures Act. Section 5-6 of the Administrative Procedures Act states in relevant part that, quote, all rulemaking authority is conditioned on the rules being adopted in accordance with all provisions of this Act and all rules and procedures of the Joint Committee on Administrative Rules. Any purported rule not so adopted, for whatever reason, is unauthorized, end quote. It further states that, quote, no agency rule is valid or effective against any person or party nor may it be invoked by the agency for any purpose until it has been made available for public inspection and filed with the Illinois Secretary of State as required by this Act. This Court has held that an agency rule not adopted pursuant to the requirements of the Act is unauthorized and invalid. I'm citing to Windy City Promotions LLC v. Illinois Gaming Board where the state gaming board published an opinion regarding electronic product promotion kiosks on its website. This Court found that this opinion constituted a rule and was invalid as it had not been adopted pursuant to the terms of the Administrative Procedures Act. The Department purportedly issued its revocation notice of the highway permit issued to the year and three-year post-installation safety evaluation reports. In doing so, the Department failed to consider that the memorandum, which purports to impose this reporting requirement, exceeded the Department's authority, was invalid, and did not impose a submission requirement or a deadline by which to submit. Further, the Department failed to consider that, though statutorily required to do so, it did not timely provide traffic crash data to the City. The Department had the traffic crash data for the inspection, but nothing in the record indicates that it ever even considered it. In fact, although the Department had it in its possession, the Department's purported administrative record of proceedings does not include or reference the traffic crash data for the intersection. The Department's purported administrative record of proceedings also does not include any information that the Department's traffic crash data for the inspection had not been provided to, and was not then readily available to, the City. Excuse me, Mr. Holmes, when was the permit issued to Oakbrook? It was issued in 2017, Your Honor. Thank you. I believe specifically signed on 28 October 2016, Your Honor. And you acknowledge that Oakbrook Terrace had the authority to enter into that permitting process with the Department? Absolutely, Your Honor. It was required for any kind of utility installation in the right-of-way under the state jurisdiction. Thank you. Should I continue? Yes, please.  Notwithstanding the fact that the City is not required to submit the report under the memorandum, had the report been required by the memorandum, the City needed the Department compiled traffic crash data for the intersection to provide such a report. Though statutorily required to do so, the Department failed to timely provide that data. I'm referencing the requirements stated in 625 ILCS 5, section 11-412. Notwithstanding the fact that the memorandum was invalid, it did not require any report to be filed with the Department. It only required preparation of a report. Section 11-206.8, which gives the authority to the City to install automated traffic law enforcement devices, requires the City to conduct a statistical analysis to assess the safety impact of its automated traffic law enforcement system, to publish it on its website, and to make it available to the public. The statute does not require the City to submit reports to the Department. The statute does not set any deadline for any report to be filed with the Department. The invalid memorandum only required that a report be prepared by the City. On its face, it imposed no report submission requirement. It imposed no deadline for any report to be filed with the Department. Reviewing this matter is de novo, meaning we try the matter anew as if it had not been heard before and as if no decision had been previously rendered, with the same effect and intent as if no previous action had taken place. A de novo hearing is a new adversarial proceeding in which is neither dependent upon nor limited by the proceedings below. The memorandum relied upon by the Department of Transportation was not incorporated by reference into the Highway Construction Permit. To incorporate material by reference, the host document must identify with detailed is found in the various documents identified. Language must be used that is express and clear so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the reference document is being incorporated. Under Illinois law, a document is incorporated by reference only if the parties intended its incorporation. No intent is expressed in the Highway Permit to incorporate the memorandum by reference. The City surely did not intend for the memorandum to be incorporated by reference. If the Department had intended to incorporate the memorandum by reference, it easily could have mentioned it, referred to it, or attached a copy of the memorandum to the Highway Permit. However, the Department did no such thing. Excuse me, Mr. Holmes. What about the Department's general supervisory authority over the highway under the Highway Code? Absolutely. The Department does have general supervisory authority of the highway under the Highway Code. However, it does not have any authority to enforce the Illinois Vehicle Code. I'm actually going to get to that in a moment, but I'm happy to jump ahead. With respect to… Well, wouldn't super general supervisory authority over the highway include authority over the use and installation and even removal of traffic cameras or traffic devices? To the extent that they are installed, yes. But to the extent that it is occupying the right-of-way, no. The State of Illinois does not own the state highways, and the Department of Transportation can only regulate construction therein. It has no authority to expel devices or, for the same reason, how do I phrase this better? The Department would need to have a statute enacted to remove it once or work out an accommodation with the City to remove the ATLE, absent, you know, any type of statutory authority to do so. I think you're saying it would require specific statutory authority to remove above and beyond its general supervisor. Yes. So, looking at the legislative authority granted to municipalities, which has specific authority to locate and operate ATLEs on its roads, including state highways, that is a very specific statute, and specific statutes control over general statutes. In this case, the Department would not have the authority to regulate to whom a police officer issued a traffic citation or offense on a traffic highway. It wouldn't have any authority prohibiting a police officer from writing a citation for a red light on a state highway. The state delegated that power to the city. Now, the state also delegated it to the Sheriff's Department and the state police, which, you know, performs the same type of services that an automatic traffic law enforcement system provides, but it's not delegated to the Department of Transportation. Mr. Holmes, on another question, if I may. Yeah, please. Thank you. You say that the terms of the memorandum were not controlling because, okay, it required a one-year and a three-year report. Yes. The city did, in fact, submit the one-year report in July, I believe, of 2020, correct? That is correct. Even though you felt you were under no obligation to do that? Well, we had to create it under the requirements of the Illinois Vehicle Code. And once provided, we have no objection to submitting the reports because they're going to be available on our website anyway. The issue is that we can't create them until such time as we receive the crash data report from the state. And the state had sent three notices indicating that the report was due, correct? That is correct. Now, this is part of the issue. We actually filed a motion to supplement the record to show that we had sent emails requesting crash data report, and those were not included in the record and were excluded from consideration. This is one of the issues and why we believe this should have been a de novo proceeding and would obviously have been more fair if we had had a hearing. Did you request a hearing, Mr. Holmes? And if so, how did you go about it? We never, we don't have any authority to request a hearing, nor are we entitled to. We did not receive any notice of the revocation until we were revoked, Your Honor. So, it was, our sole remedy at that point is seeking administrative review of the decision to revoke the highway permit. May I continue?  Thank you. Sorry. I believe I was talking about incorporating material by reference. The vague reference in the highway permit to quote any and all documents, writings, and notes reflecting or identifying the standards, specifications, understandings, and conditions applicable to the performance of the work is not sufficient to incorporate the memorandum. By the reasoning of the department, that would include anything that had ever been published by the department and possibly the Library of Congress. The department concludes the memorandum was incorporated by reference without citing a single authority to support its claim. The cases cited by the department are contract cases and easily distinguishable. The Millennium case considered an agreement, which was 34 pages of attached writers, not incorporated by reference. The Kirchhoff case did not include incorporation, didn't consider incorporation by reference, and in Golan, the president of the company, in writing, approved each paragraph of a memorandum held to be incorporated into the pension agreement. He initialed each paragraph. These cases are clearly an opposite to the Instant case, in which the permit contained no specific reference for acknowledgement of the 2013 memorandum. All right. I think I already covered this a little bit, but I'm going to go through it anyway. I'm running out of time, though, so the department's authority does not extend to enforcing the Illinois Vehicle Code. The city enforces the Illinois Vehicle Code on both city and state roads located within the city. The city has a police force to enforce the rules of the road, and the department does not. The department lacked authority to extend the reach of the highway permit beyond the installation of the automated traffic law enforcement system. As noted in the highway code, the highway permit's authority is limited to the installation to cut, excavate, or otherwise damage the portion of the right of way. I'd also refer this court to the Illinois Department of Transportation flowchart, where the 4-209 permit process ends with, quote, I dot final acceptance letter to permitee. The highway permit was extending their authority beyond that is ultraviolence. The department argues this authority comes from its general supervision power, but the 16 enumerated powers of the Illinois Department of Transportation do not include any mention of the power or duty to regulate the operation of any automated traffic law enforcement system or to enforce any part of the Illinois Vehicle Code. Wow, I'm running really low on time here. The department's answer should have been stricken, and judgment entered in favor of the city because the department failed to make and include in its answer a record of proceedings. The department admits that its answer contained no record of any proceedings because there were none, and the department's certification supported this under oath. Kiwanee School District versus the regional school board illustrates the flaw in this reasoning. In Kiwanee, the regional board argued that it did not need to have a hearing, hence no requirement was made to make a record. The 3rd District Appellate Court rejected this argument, holding that absent a record, the district has not answered and is technically in default and cannot prevail. Thank you for your time. Justice Anderson, any questions? Thank you. Justice Pertani? No, thank you. Thank you, Mr. Holmes. You will have time in reply. Thank you. Mr. Neumeister? Yes, thank you, Your Honors, and may it please the court and counsel, good afternoon, Your Honors. I am Assistant Attorney General Dave Neumeister on behalf of the Department of Transportation and its director. The overarching issue that we need to decide here is whether the department's decision to revoke the permit was clearly erroneous, and it was not. So let me talk about the standard of review for just a moment. This case was filed as an administrative review action, and there are specific standards of review that apply in administrative review actions, as Your Honors know. Can I ask you about that, Mr. Neumeister? Typically, in an administrative review case, you know, you have a determination by an administrative agency, but it follows an adversarial proceeding. It follows presentational evidence. It follows a determination by an impartial fact finder. Is that what happened here? No, Your Honor, it's not what happened here because there is no statute or regulation that sets this up to be subject to an administrative review proceeding or an adversarial hearing. There was some discussion in the trial court as to whether the administrative review law was even a procedurally appropriate vehicle to bring this case. Is that still in dispute or not really? I don't think that's in dispute, and let's keep in mind that it was the city that brought the case as an administrative review action. I understand, but it doesn't look like an administrative review case. Well, no, it doesn't look like one, but again, the city brought it in that fashion, and typically when an administrative review case is filed, it's when the statutes, the governing statutes, allow for an administrative proceeding that would include an adversarial hearing before, like just for instance, the Department of Employment Security would have an administrative hearing before an administrative law judge, and then the agency would make its decision. But I think the city agrees that there was no statutory scheme invoked here that allowed for an administrative hearing. Now, that would have been beyond the department's powers to convene, and the city couldn't invoke it because there was no statutory scheme here at issue that provided for one. But still, the city chose to bring the administrative review action in that procedural posture. So I agree with your honor that it does appear to a certain extent to be trying to fit a square peg into a round hole, but again, that's the way the city brought it, and it brought it with no statutory scheme that allowed for the procedure that they appear to be contending should have taken place. And then when the circuit court got a hold of it, the circuit court did what it should have done, is treated this like the kind of action that was filed in administrative review, where it looked at the department's decision to determine whether, under this scenario, a mixed question of law and fact, whether the department's decision to revoke the permit was clearly erroneous. And because that's the way the action was styled, that's the standards of review that are invoked here. In an administrative review action such as has been filed by the choice of the city, we look at the agency's decision and decide whether it was clearly erroneous. That's what the circuit court did. Does it make it an administrative review case just because somebody calls it an administrative review case? Not in the sense that it would have required, you know, retroactively certain proceedings and procedural safeguards to have taken place. But it does constrain the circuit court's, I mean, the circuit court gets a pleading and the circuit court addresses the pleading as it's filed. So it's not the circuit court's business to replete if it doesn't think that this should have technically been an administrative review action, but the circuit court treats it like one. And that's also what the department did when it filed the answer. It, because it was sued in an administrative review action, it filed the administrative record as under, you know, that type of action it's required to do. So the circuit court's just, it's dealing with the matter as it's filed by the plaintiff, the petitioner, in this case, the city. Circuit court did what it was supposed to do in reviewing the department's decision for clear error. And that's the standard of review that's overriding here. Thank you. And in making this decision of whether we have clear error here, which there was not, there are two things we need to decide. First is whether the memorandum, specifically the reporting requirements, were enforceable against the city, and they were, and whether the city violated them, which it did. The first point has several sub-issues. First, the memorandum was not required to be adopted under the Administrative Procedure Act. It didn't interpret any relevant laws here. Not the DOT law, not the highway code, not the vehicle code, but rather it was a supplement to the permitting process so that applicants knew everything that was involved, from both the initial application through keeping the permit enforced after installation. But regardless, the memorandum was exempt from the Administrative Procedure Act rulemaking process as first, as a standard form, and as we briefed, because it was related to public property, and that includes state highways. The memorandum and permit pertain solely to state highways because that's the whole reason for their existence in the first place, to spell out the requirement for installing and operating a system on a state route. The second point is, given that the memorandum wasn't subject to the Administrative Procedure Act, was it then properly incorporated into the permit? Well, it was. The incorporation clause is broad enough to include it, and arguing that the clause didn't specifically refer to the memorandum by name isn't helpful because that's not practical in every case. In this case, we could have not only the permit, but architectural drawings, architectural is the right word, but engineering drawings and plans and a number of things that would make listing each one impractical. And it is acceptable for public permits to use incorporation clauses, and that's why the memorandum is enforceable here, is because it was incorporated into the permit. The city never disavowed the reporting requirement and, in fact, acknowledged it by never objecting to it and then actually submitting the first report, albeit late. Now, the third point is that the permit gave IDOT supervisory authority even after the system was installed in operation. To make any sense, as part of IDOT statutory oversight of state routes, authority over the system would have to extend beyond installation. If not, there's no practical way for IDOT to carry out its statutory duty, and a public body does have a right to revoke a permit if it discovers noncompliance. Otherwise, the city could take control of an intersection into perpetuity once it got the permit, and the reporting requirements would serve little purpose if IDOT couldn't intervene when the system wasn't meeting its goals. And that continuing authority is consistent with IDOT's authority and responsibilities under the Highway Code and the DOT law, and the permit itself was consistent with that in Condition 6, which gave IDOT authority to take steps at any time that may be necessary to safeguard life or property. Plus, the permit incorporated the memorandum that included obligations, such as reporting, that extended beyond the installation period, and the memorandum was consistent also in allowing revocation at any time during the annual review period, which would have commenced after the first report was filed. Now, there's no conflict with the Vehicle Code here, because that law gives the city the right to enforce, or not enforce, but enact an ordinance, allowing for it to put a system in place and operate it. Plus, the Vehicle Code also required the city, as we've discussed, to perform a detailed statistical analysis of the system on a designated schedule, and all the memorandum did was require that data to be passed along to IDOT. Nothing in the Vehicle Code supersedes or negates IDOT's supervisory authority. Those statutes all have to be read together harmoniously with each other and to avoid any conflict, and it's hard to envision what practical purpose reporting would serve if IDOT couldn't intervene, depending on the circumstances. So, based on all of those factors, the requirements were enforceable against the city. The final point, then, is whether the city violated, and it did. There's really no legitimate dispute about what the reporting deadlines were and that the city missed them. The real point here is that the city knew about them, but didn't do anything to disavow or object to them until IDOT revoked the permit. And, as we've discussed, IDOT reminded the city several times that the reports were due, and the city never responded until it submitted the first report, that being two years late. So, just from a common sense perspective, if the city didn't think that those requirements applied, it would have said something fairly promptly in response to IDOT's notice letters, but it didn't. It ignored the letters and then filed the first report. Then, once IDOT revoked the permit, after yet another notice letter, the city tried to excuse its conduct after the fact. So, based on the record before us, there's no dispute that the reporting requirement wasn't met, so that IDOT's decision to revoke the permit was not clearly erroneous. Unless your honors have other questions for me, I would stand on my briefs as to anything remaining, and thank you very much for your time and attention, and ask that the department's decision be affirmed. Mr. Neumeister, can you address the issue with regard to the dismissal of Mr. Jose Rios? Sure. Mr. Rios was a department employee who merely signed off on a permit in his official capacity. The point of the dismissal being correct is that no specific relief was sought against Mr. Rios, and the administrative review law provides that, you know, a proper defendant in a review action are parties to the proceeding. That would be the agency itself, and in this case, its director, and not just a mid-level employee who signed a letter in his professional capacity on the agent's behalf. That party is not necessary to give the city the relief that it requests. No relief was sought specifically against Mr. Rios, and he was such a party that was, I guess you'd say, unnecessary to the proceedings, and since no additional relief, specific relief was sought against him, he only appeared at this point in the record to sign the letter in his official capacity, not acting beyond his role with the department, outside the scope of his employment. Dismissal was proper for those reasons. Thank you. Justice Pertani, any questions? I have none. Thank you. Justice Anderson? No, thank you. Thank you, Mr. Neumeister. Mr. Hall, do you have a reply? I'd like to address a few of the things that Mr. Neumeister said. Can you hear me? Yes. All right. First, I would point out that Mr. Neumeister stated there's mixed questions of law and fact in this matter, and I believe that when we talk about the questions of law in this case, the matter was de novo, and as a result, we believe that it was an error that there was a protective order limiting discovery in this matter. As I mentioned earlier, communications between the city and, quite frankly, who made the decision on behalf of the Department of Transportation are things that are not identified. As just acknowledged by Mr. Neumeister, Rios, quote, was a mid-level employee, end quote. That means that he is not the person who made the decision, which means that the record itself is therefore incomplete. With respect to the memorandum not requiring to be compliant with the Illinois Administrative Procedures Act, I believe he was referring to section 5-35B, which applies to, quote, contesting rules that are noncompliant on the grounds of procedural requirements. We are challenging this, not necessarily, it's basically a complete failure to deal with that. With respect to, just one second, I'm trying to make sure I get everything I need to get in here. With respect to the question that whether or not an administrative rule that applies solely to public property requires compliance with the Administrative Procedures Act, that is correct. But this memorandum purportedly requires, makes requirements on the city of Oak Brook Terrace. It's not strictly related to, this is what you can put here. It requires affirmative action by a different governmental agency, and therefore, that section exempting it from the Administrative Procedures Act does not apply. With respect to Mr. Rios, which I didn't get a chance to apply, this court has held, it advised and admonished the plaintiffs in administrative review proceedings that future, quote, plaintiffs will be well advised to name as defendants those officials whose names appear here on final orders. It's the same thing that happened in the Trenton Arrow versus Police Pension Fund case, which we cite extensively. The failure to name trustees who signed an order, a written decision in that case, were in error. The Department argues that the Department of Transportation Law broadly authorized the Department to regulate automatic traffic control devices. And it argues for the first time on appeal that the Department of Transportation granted the authority over the ATLAS system after its installation was completed. This argument is forfeited because it was not first raised in the circuit court and is now being raised for the first time on appeal. The Department of Transportation Law does not give the Department authority to enforce the rules of the road or to regulate the use of an enforcement device in a state or local right of way. The Department argues but fails to explain how the policy statement and the general supervision power grant the Department the power to issue a permit that regulates the operation of a traffic enforcement device. Once the system has been fully installed, approved by the Department, and the site of the installation, which cut, excavated, or otherwise damaged the highway has been fully restored. Neither statute mentions an automatic traffic law enforcement system. Neither grants to issue or revoke a permit for the operation of an ATLE. Section 4-101 of the Illinois Highway Code lists the powers and duties of the Department and makes no mention of automatic traffic law enforcement systems whatsoever. An administrative agency has no inherent or common law power and may only act in accordance with the power conferred upon it by the legislature. In this case, they are exceeding their authority. The City requests the Court reverse the Circuit Court's judgment in favor of the Department and enter judgment in favor of the City, rescinding the revocation notice and the Department's orders to deactivate and remove the City's automatic traffic law enforcement system and order the reinstallation of the City's ATLE. In the alternative, we request that this Court remand this case for further completion of discovery and for trial on the merits, with erections, and reinstate the preliminary injunction withstave the revocation notice and the Department's orders to deactivate and order the reinstallation of the City's automatic traffic law enforcement system. Thank you. Thank you. Justice Anderson, any questions? No, thank you. Justice Bertani? No, Justice. Thank you. Thank you, Mr. Holmes, Mr. Neumeister, for your arguments this afternoon. The matter will be taken under advisement and a ruling issued forthwith.